IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN J. DENNIS, JR.,** | : | **Civil No. 1:19-CV-01449** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SUSQUEHANNA TOWNSHIP, et al.,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

**M E M O R A N D U M**

In this civil rights action, John J. Dennis, Jr. ("Plaintiff") alleges he was the victim of excessive force, false arrest, malicious prosecution, and several state law torts at the hands of Susquehanna Township, its police department, and four of its police officers: Chief Robert Martin, Officer Ryan Lindsley, Sergeant Brian Tienter, and Officer Joshua Dupler.[1] Presently before the court is a motion for summary judgment filed by Defendants as to all of Plaintiff's claims. (Doc. 51.) For the reasons set forth below, the motion will be granted with respect to Plaintiff's federal claims.

## I.    BACKGROUND

---

[1] Officer Dupler has filed a compulsory counterclaim against Plaintiff for assault and battery (Doc. 43) and has moved for summary judgment on that claim (Doc. 51).

This matter arises out of the Susquehanna Township Police Department's response to a 911 call on August 24, 2017, and the resulting arrest and prosecution of Plaintiff by Officers Dupler and Lindsley, Sergeant Tienter, and Chief Martin. The primary factual disputes in this case revolve around the circumstances of Officer Dupler's initial interaction with Plaintiff as the lone first responder to the 911 call in dark conditions and without a body-worn camera or microphone. The following facts are taken from the parties' respective statements of material facts and the attached exhibits.

On August 24, 2017, at around 8:15 P.M., Roslee Lipscomb placed a 911 call on behalf of her niece, Xylina Lipscomb, because Xylina's ex-boyfriend, "Jay Dennison," was allegedly attempting to break into Xylina's house at 205 Estherton Avenue in Susquehanna Township. (*See* August 24, 2017, 911 Call ("911 Call")). Roslee explained to the 911 operator that she and Xylina had been talking on the phone when Xylina asked Roslee to call the police because Dennison, who she had a restraining order against, had "punched the glass and broke her window" and cut off the lights to the house. (911 Call at 00:58-01:25.) Roslee described Dennison as black with hazel eyes, age 34 or 35, and typically driving a black sedan. (911 Call at 02:09-03:00.)

A radio call went out to Susquehanna Township Police Department units, stating: "Possible break in, 205 Estherton Avenue . . . a third-party caller Roslee

Lipscomb saying that her niece's ex-boyfriend is breaking into the house. The ex-boyfriend, a Jay Dennison, 34-year-old black male, unknown clothing description, he is to drive a black Ford sedan . . . ." (STPD Radio Dispatch; Ex. B.) Officer Dupler responded to the scene approximately thirty seconds later, turning off the headlights of his cruiser as he approached. (Ex. C at 18:2-19:19, 20:24-21:2, 32:16-33:13, 36:17-22; Ex. D at 000010.) The parties largely agree on the preceding facts. The starkly divergent sequences of events that follow are the genesis of the factual disputes in this case.

### a. Defendants' Account of August 24, 2017

Officer Dupler testified that as he approached 205 Estherton, he observed Plaintiff exit the house and walk toward the street where a car matching the description given by the radio dispatch was parked. (Ex. C at 31:1-32:7, 34:5-34:14.) At the same time, Officer Dupler heard a woman screaming: "he is taking my baby, give me my baby back." (Ex. C. at 34:1-34:25.) He noted that Plaintiff "had a kid in his hand," and believed that he was potentially witnessing a kidnapping associated with the reported break-in. (Ex. C at 43:4-43:8; 45:5-46:4.) Officer Dupler, who was in full uniform, then approached Plaintiff with a flashlight and directed him to stop, to which Plaintiff responded, "I'm not fucking stopping for you."[2] (Ex. E; Ex. C at

---

[2] Officer Dupler's police cruiser was equipped with a dashboard camera that recorded video in front of the cruiser, but the camera did not have a "microphone pack," meaning there is no audio

55:10-15, 55:20-56:15, 56:25-57:24.) Instead, Plaintiff attempted to walk away but Officer Dupler grabbed him. A scuffle ensued, during which Plaintiff jabbed at Officer Dupler who in turn responded with several punches, though it is unclear if he made contact. Officer Dupler then pushed Plaintiff against a car, but Plaintiff broke free and again started to walk away. (Ex. C. at 66:13-68:19; Ex. E. at 8:41.) At that point, Officer Dupler pulled out his taser and attempted to physically block Plaintiff from fleeing, and Plaintiff responded by pushing back and striking him in the nose. (Ex. C 72:20-73:7.) Officer Dupler sustained a broken nose and a chipped tooth. (Ex. C 73:22-74:11, 80:2-18.)

Moments later, Sergeant Tienter and Officer Lindsley, who had arrived during this confrontation, directed Plaintiff to hand over the child in his arms, but Plaintiff initially refused. (Ex. G at 23:18-24:12.) Officer Lindsley then drew his taser, and Plaintiff handed the child over to her mother. (Ex. H at 29:25-30:8, 31:3-11, 32:8-20, 36:8-11; Ex. L at 79:22-80:9.) At that time, Plaintiff was placed under arrest.

### b. Plaintiff's Account of August 24, 2017

According to Plaintiff's recitation of the events, he was standing on the sidewalk with his one-year-old daughter in his arms when—without warning—an unknown individual (later identified as Officer Dupler) shined a light in his eyes,

---

associated with this video. (Ex. E; Ex. C at 19:20-21:6.) In addition, and as previously noted, Officer Dupler was not equipped with a body camera.

blinding him. (Ex. N at p. 4, No. 11; Ex. L at 63:17-22.) Plaintiff attempted to "walk around the light" and into the street when he was suddenly yanked backward. (Ex. L at 63:17-64:9.) Officer Dupler then grabbed Plaintiff's left arm and began to punch him in the head and neck area, before pushing him up against a parked van, which caused the child's head to hit the van. (Ex. L at 64:10-65:9, 66:10-14; Ex. N. at p. 4, No. 11.) Just as this occurred, Plaintiff observed Sergeant Tienter arrive in his police cruiser, and recognizing him as a police officer, began to yell for help. (Ex. L at 67:1-67:25.) Sergeant Tienter directed Officer Dupler to back away because Plaintiff had a young child in his arms, and Officer Dupler briefly paused but then proceeded to tackle Plaintiff. (Ex. N at p. 4, No. 11.) At that point, Sergeant Tienter grabbed Plaintiff's left arm and threatened to tase him unless he let go of the child. (Ex. L at 73:9-74:3, 126:23-127:1.) Plaintiff did not immediately comply because he was waiting for her mother, but once she appeared, he handed over the child and was subsequently arrested. (Ex. L at 79:6-80:9.)

Officer Lindsley interviewed Xylina shortly after the arrest, and Xylina mentioned that she had a protection from abuse order against Plaintiff but could not confirm if Plaintiff had been served with it. (Ex. I at 41:47-42:30; Ex. H at 56:4-12; Ex. R at 330:3-331:12.) Xylina also told Officer Lindsley that Officer Dupler had confronted Plaintiff without assessing the situation or attempting to de-escalate it. (Ex. I at 37:47-37:58 and 40:35-41:05.)

### c.  Subsequent Events

Plaintiff was initially charged by the Susquehanna Township Police Department with aggravated assault, criminal trespass, and a violation of a protection from abuse order.[3] (Ex. J at ¶ 5.) After Plaintiff waived his preliminary hearing, the Dauphin County District Attorney's Office added charges of endangering the welfare of children and resisting arrest. (Ex. J at ¶ 6.) An amended criminal information was later filed, which added one count of criminal mischief and a lesser included offense of aggravated assault and removed the charge of resisting arrest. The case proceeded to trial in July 2021, where a jury acquitted Plaintiff on all charges.

In August 2019, Plaintiff initiated this action by filing a complaint, which he subsequently amended in November 2022 after his acquittal. (Doc. 1; Doc. 37.) The amended complaint appears to assert the following claims:[4] Count I asserts a claim of excessive force against Officer Dupler; Count II asserts a claim of false arrest and malicious prosecution against Officers Dupler and Lindsley and Sergeant Tienter; Count III asserts supervisory liability claims for excessive force, false arrest,

---

[3] The violation of the protection from abuse order was filed in a separate criminal complaint and was not adjudicated at a jury trial with Plaintiff's other criminal charges stemming from the August 24, 2017, incident. (Ex. D; Ex. V.) Instead, the protection from abuse violation, which is enforced by way of indirect criminal contempt, was withdrawn on August 29, 2017, with the protection from abuse remaining if full effect. (Ex. V.)

[4] The amended complaint is pleaded in such a way as to make the actual claims against each defendant unclear, as each individual "claim" is merely titled, "FEDERAL CIVIL RIGHTS VIOLATIONS" and appear to include multiple claims. (*See* Doc. 37.)

malicious prosecution against Chief Martin; Count IV asserts a municipal liability claim for failure to train against Susquehanna Township; and Count V asserts state law claims of malicious prosecution, assault and battery, and willful misconduct against all of the defendants. Pursuant to Federal Rule of Civil Procedure 13(a), Officer Dupler filed a counterclaim against Plaintiff for assault and battery. (Doc. 42.) Jurisdiction is proper under 28 U.S.C. § 1331 and 1367. Defendants filed a motion requesting summary judgment on all counts and Officer Dupler seeks summary judgment on his state law counterclaim. (Doc. 51.) The motion has been fully briefed and is ripe for review.

## II.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and

draw all reasonable inferences in their favor. *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

8

## III.  __DISCUSSION__

Section 1983 provides private citizens an avenue to seek civil redress when they have been deprived of their constitutional rights by state officials in violation of federal law. 42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must show "a violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). There is no dispute that Defendants are state actors for purposes of Section 1983. At this stage, the court thus considers whether, viewing the disputed facts in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff was deprived of a constitutional right.

### A. Excessive Force Claim Against Officer Dupler

Plaintiff first claims that Officer Dupler used excessive force against him in violation of his Fourth Amendment right to be free from unreasonable seizure. A plaintiff may prevail on an excessive force claim if he can establish that a seizure occurred and that the seizure was "unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011). A "seizure" occurs for purposes of the Fourth Amendment when a suspect "submits to the police's show of authority or the police subject him to some degree of physical force." *Abraham v. Raso*, 183 F.3d 279, 291 (3d Cir. 1999). The Supreme Court has instructed that "[d]etermining

whether the force used to effect a particular seizure is 'reasonable' ... requires ... careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This inquiry is an objective one. *Id.* at 397. Additionally, reasonableness is to be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. As the Supreme Court has succinctly explained:

> not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.
> *Id.* at 397.

Even if Plaintiff's recitation of his encounter with Officer Dupler is credited and could provide an arguably triable issue with respect to the amount of force used, the court finds that Officer Dupler is entitled to qualified immunity because it is clear from the record that no reasonable officer would have believed he was violating a clearly established right by using force against a potential kidnapper who has admitted to not handing over the child as directed. Qualified immunity protects officials, including police officers, from suits for money damages, when "their

10

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The first prong of the inquiry requires the court to consider whether the facts alleged show that the officer's conduct violated a constitutional right. *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second prong requires the court to consider "whether the right was clearly established, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (quoting *Saucier*, 533 U.S. at 202). Satisfying either prong entitles an officer to qualified immunity. *Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017).  Courts may begin their inquiry with either prong. *See Santini v. Fuentes*, 795 F.3d 410, 418 (citing *Pearson*, 555 U.S. at 236). A right is clearly established when, at the time of the challenged conduct, the right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "If no case speaks directly to the legality of the officer's conduct, the challenged conduct [needs] to be such that reasonable officers in the defendant['s] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful." *Geist v. Ammary*,

40 F. Supp. 3d 467, 485 (E.D. Pa. 2014) (citing *Giuffre v. Bissell*, 31 F.3d 1241, 1255 (3d Cir. 1994)) (internal quotations omitted).

Here, even assuming a constitutional violation occurred, Plaintiff has not identified, and the court is unaware of, any analogous precedent or a body of persuasive authority that would have clearly established a right to be free from force in this specific factual context where a police officer uses force to apprehend an individual suspected of presently kidnapping a child.[5] As such, Officer Dupler is entitled to qualified immunity for lack of a clearly established right and summary judgment will be granted in his favor with respect to this claim.[6]

### B. False Arrest

---

[5] Plaintiff asserts that this case is one which the violation is "so obvious" that public officials know that a clearly established right is in play even in the absence of closely analogous precedent. (Doc. 64 at p. 19.) The court, however, disagrees with the characterization of the alleged violation as being "so obvious" that every reasonable official in Officer Dupler's position would have understood that applying force to Plaintiff amounted to a violation of Plaintiff's constitutional rights.

[6] The court will also grant the motion for summary judgment on Plaintiff's claim for supervisory liability against Chief Martin as it relates to the excessive force claim against Officer Dupler. In the claim, Plaintiff conclusively asserts that Officer Dupler failed to follow the police department's Use of Force Policy, which provides a continuum from least force to most force: (1) level one is verbal control; (2) level two is escort; (3) level three is chemical agents; and (4) level four is control and compliance. (Ex. P at 000277-000279.) Even if Plaintiff's claim against Chief Martin could proceed when the underlying claim for excessive force has been dismissed, Plaintiff in no way connects this single incident of an arguable violation of the departments use of for policy to Chief Martin.

Defendants are likewise entitled to summary judgment on Plaintiff's false arrest claim.[7] As with excessive force, a claim under Section 1983 for false arrest is grounded in the Fourth Amendment's prohibition against unreasonable seizures. *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). To bring a claim for false arrest, a plaintiff must establish "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)). In the context of an arrest, probable cause exists when the facts and circumstances are "sufficient to justify a prudent officer in believing that the suspect had committed or was committing a crime." *Jones v. Middletown Twp.*, 253 F. App'x 184, 188 (3d Cir. 2007) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)). A court will look to the "totality of the circumstances" and use a "common sense approach" in assessing whether there was or was not probable cause at the time of an individual's arrest. *Id.* (citing *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984)). Further, an officer's subjective reason for making the arrest "need not be the criminal offense as to which the known facts provide probable cause." *Brown v.*

---

[7] While the amended complaint refers only to unlawful seizure rather than false arrest, the circumstances surrounding Plaintiff's claim indicate that it stems from his belief that he was the victim of a false arrest in violation of his Fourth Amendment constitutional right to be free from an unlawful seizure. The court will thus treat this claim as one for false arrest as courts in this circuit have used both unlawful seizure and false arrest to refer to the same tort.

*Makofka*, 644 F. App'x 139, 143 (3d Cir. 2016) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Under the circumstances, the officers plainly had probable cause to arrest Plaintiff for—at a minimum—aggravated assault. A contemporaneous recording from the scene made prior to Plaintiff's arrest captured Officer Dupler telling Officer Lindsley and Sergeant Tienter that Plaintiff "punched me once up here . . . punched me in the hand . . . and then right here, clocked me." (Ex. I at 16:03-17:15.) As probable cause only requires a fair probability that a crime has been committed and does not require the officers to resolve all conflicting evidence, there is no genuine dispute of material fact with respect to whether the officers had probable cause to effectuate an arrest. As such, summary judgment will be granted on this claim.[8]

### C. Malicious Prosecution

The court will also grant summary judgment as to Plaintiff's claim for malicious prosecution. In order to prevail on a Section 1983 malicious prosecution

---

[8]As to Chief Martin, Plaintiff's inability to advance factual matter that plausibly establishes a constitutional violation necessarily bars a Section 1983 claim based on supervisory liability. To establish supervisory liability, Plaintiff must show that a supervisor "participated in violating [his] rights, or that he directed others to violate them, or that he ... had knowledge of and acquiesced in his subordinates' violations." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). However, as is logically implied, a supervisor cannot be liable in the absence of an underlying constitutional violation by a supervisee. *Crawford v. Lappin*, 446 F. App'x 413, 416 (3d Cir. 2011) (citing *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011)). This court has already held that Plaintiff's claim for false arrest fails as a matter of law. Thus, by logical extension, his supervisory liability claim also fails.

claim, a plaintiff must show the: (1) defendants initiated a criminal proceeding; (2) the criminal proceeding terminated in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Under prong three, a showing of probable cause is a complete defense to civil liability. *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016).

As explained above, probable cause exists when the facts and circumstances within the officer's knowledge would convince a reasonable person that an individual has committed an offense. *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995); *accord Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) ("While 'the probable-cause standard is incapable of precise definition or quantification,' all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain."). Although the question of probable cause is generally left to the jury, a court may conclude based on the totality of the circumstances that probable cause exists as a matter of law if the evidence, viewed most favorably to the nonmoving party, reasonably would not support a contrary

finding.[9] *Goodwin*, 836 F.3d at 327 (citation and quotations omitted). Unlike with a false arrest claim, the existence of probable cause on one charge "does not foreclose a malicious prosecution cause of action" as to another charge that lacks probable cause. *Johnson v. Knorr*, 477 F.3d 75, 83 (3d Cir. 2007).

Here, the police officers charged Plaintiff with aggravated assault, criminal trespass, and indirect criminal contempt for a violation of a protection from abuse order. The court has already found that there is no genuine dispute of material fact with respect to whether the officer's had probable cause to arrest Plaintiff for aggravated assault, and Plaintiff has pointed to no intervening evidence that would have eviscerated probable cause between the time of his arrest and the time he was charged by the police. Thus, what remains is whether there is a genuine dispute of material fact with respect to probable cause for the criminal trespass and indirect criminal contempt offense. The officers charged Plaintiff criminal trespass, an offense making it unlawful for a person knowing they are not licensed or privileged

---

[9] As the Third Circuit has noted, "[t]here is tension inherent in evaluating probable cause at the summary judgment stage." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016). The summary judgment standard asks whether there is a genuine dispute as to any material fact. The probable cause standard, on the other hand, "allows for the existence of conflicting, even irreconcilable, evidence." *Id.* (citing *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005)). Thus, the summary judgment standard as it pertains to probable cause "must tolerate conflicting evidence to the extent it is permitted by the probable cause standard." *Id.* That is, where a reasonable jury could conclude that the facts, viewed in the light most favorable to the nonmoving party, did not demonstrate a "fair probability" that a crime occurred, "only then would the existence of conflicting evidence rise to the level of a genuine dispute as to any material fact." *Id.*

to do so to "break[] into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa. C.S. 3503(a)(1)(ii). The premise of this offense is that Plaintiff broke the window of Xylina's house while he was not privileged to be at 205 Estherton on account of a protection of abuse order that was allegedly issued against him in May 2017. (Ex. D at p. 5; 911 Call.) Upon evaluating the disputed facts in the light most favorable to Plaintiff, the court finds that the officers had probable cause to suspect that Plaintiff, who was not privileged to be at 205 Estherton, had allegedly attempted to break into the house. As Plaintiff has pointed to no analogous case or persuasive authority to support that he had a clearly established right against prosecution on this charge under the circumstances, Defendants are entitled to qualified immunity. Similarly, Defendants were entitled to rely on Xylina's word that she had a protection from abuse order even if she was unable to say if Plaintiff was served with it. Defendants are entitled to qualified immunity for this charge as well. Thus, the court will grant Defendants' motion for summary judgment on Plaintiff's malicious prosecution claims.[10]

### D. Municipal Liability[11]

---

[10] Summary judgment will be granted as to supervisory liability because nothing in the record connects this claim with any action or policy of Chief Martin other than that he noted the charges on the police report.

[11] Chief Martin has been the police chief of the Susquehanna Township Police Department for twenty-five years and has final say on the training his officers are provided. (Ex. K at 14:22-152, 15:18-16:5, 17:14-15.) In a situation where it is not clear that a police officer's uniform would be visible, Chief Martin's expectation is that an officer announces their presence, although there was no formal training in that regard. (Ex. K at 22:14-23:11.) Susquehanna Township's use of

Defendants also move for summary judgment on Plaintiff's municipal liability claims. A plaintiff seeking to hold a municipality liable under Section 1983 must demonstrate that the municipality caused a constitutional violation by its policies or customs. *Id.* at 690-91. Liability is imposed where the policy or custom is the "moving force" behind the constitutional tort of one of its employees. *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)). A municipality cannot be held liable for the unconstitutional actions of its employees on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S 658, 691 (1978).

Where the policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). Ordinarily, "[a] pattern of

---

force policy is a continuum from least force to most force: (1) level one is verbal control; (2) level two is escort; (3) level three is chemical agents; and (4) level four is control and compliance. (Ex. P at 000277-000279.) While not customary, Chief Martin reviewed the charges in the police report filed against Plaintiff to note that "the charges are met," but otherwise took no action. (Ex. K at 34:10-35:24.)

similar constitutional violations by untrained employees" is necessary "to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and "[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the 'deliberate indifference' — necessary to trigger municipal liability." *Bryan Cnty.*, 520 U.S. at 407. Additionally, "the identified deficiency in a city's training program must be closely related to the ultimate injury;" or in other words, "the deficiency in training [must have] actually caused" the constitutional violation. *Canton*, 489 U.S. at 391.

Preliminarily, the court notes two defects with Plaintiff's municipal liability claim. First, the naming of Susquehanna Township together with its police department and Chief Martin in his official capacity is duplicative: Susquehanna Township is the only party that is necessary for this claim. *See Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 646 (M.D. Pa. 2016) (dismissing official-capacity claims against municipal officials as redundant when municipality was also

19

named as a defendant); *Padilla v. Twp. Of Cherry Hill*, 110 Fed. App'x 272. 278 (3d Cir. 2004) (reasoning that a police department is not a separate judicial entity, but rather an administrative arm of the municipality).

Second, Chief Martin cannot be held individually liable for the actions of a municipality. Instead, Chief Martin's alleged role as a policymaker for the township is only relevant to establishing Susquehanna Township's liability for the policies of an individual qualified to make policy. Thus, the court will only address Plaintiff's claim for municipal liability as it relates to Susquehanna Township.

Regarding the false arrest claim, there can be no liability against Susquehanna Township because the court has already found there the officers had probable cause to effectuate his arrest. As with supervisory liability, there can be no municipal liability without an underlying constitutional violation. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

As to the excessive force and malicious prosecution claims, Plaintiff has failed to produce any evidence of a causal connection between the alleged deficiency in training and his alleged injuries. Although Plaintiff argues that his injuries from the force were a "highly predictable consequence of [Susquehanna Township's] failure to train the Township's police officers regarding how to handle the recurring situations of whether to announce their presence as police officers" (Doc. 64 at p. 23), does not connect Officer Dupler's purported failure to announce himself as a

police officer with the force that Officer Dupler allegedly used. In other words, there is no indication that the result would have been any different had Officer Dupler announced his presence because, as the record reflects, Plaintiff continued to be uncooperative with the other officers who he admittedly identified as police. Moreover, Plaintiff has failed to produce any evidence suggesting a pattern of Susquehanna Township officers failing to announce their presence or failing to check if a protection from abuse order had been served, and thus he cannot establish a pattern or knowledge of similar violations by the municipality. Thus, the court will grant summary judgment for Defendants on this claim.

### E. State Law Claims

A district court may decline to exercise supplemental jurisdiction over pendent state claims once a district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367 (c)(3). Having granted Defendants' summary judgment motion with respect to all claims over which the court has original jurisdiction, the court finds it prudent after considering the factors of judicial economy, convenience, and fairness to the litigants, and declines to exercise jurisdiction over Plaintiff's state law claims of assault and battery and malicious prosecution as well as Officer Dupler's state law counterclaim. *See Patel v. Meridian Health System, Inc.*, 666 Fed. Appx. 133, 136 (3d Cir. 2016) ("A district court 'may decline to exercise supplemental jurisdiction' over state law claims if it 'has

dismissed all claims over which it has original jurisdiction[,]' unless considerations of judicial economy, convenience, or fairness to the parties provide an affirmative justification for exercising supplemental jurisdiction.") (citing *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's claims will be granted, and the state law claims will be dismissed with prejudice. An appropriate order shall follow.

/s/ Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge

Dated: July 15, 2024